UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEBORAH H.,[1] | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 1:22-cv-01967-MJD-RLY<br>) |
| KILOLO KIJAKAZI, | )<br>)<br>) |
| Defendant. | ) |

**ENTRY ON JUDICIAL REVIEW**

Claimant Deborah H. requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. *See* 42 U.S.C. § 423(d); 42 U.S.C. § 1382. For the reasons set forth below, the Court **REVERSES** the decision of the Commissioner.

**I. Background**

Claimant applied for DIB and SSI in August of 2019, alleging an onset of disability as of March 1, 2019. [Dkt. 7-2 at 28.] Claimant's applications were denied initially and again upon

---

[1] In an attempt to protect the privacy interest of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

reconsideration, and a hearing was held before Administrative Law Judge Kevin Walker ("ALJ") on August 31, 2021. [Dkt. 12 at 2.] On November 24, 2021, ALJ Walker issued his determination that Claimant was not disabled. *Id.* The Appeals Council then denied Claimant's request for review on August 8, 2022. [Dkt. 10-2 at 2.] Claimant timely filed her Complaint on October 5, 2022, seeking judicial review of the ALJ's decision. [Dkt. 1.]

## II.  Legal Standards

To be eligible for benefits, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a sequential, five-step analysis: (1) if the claimant is engaged in substantial gainful activity, she is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits her ability to perform basic work activities, she is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three, and is able to perform her past relevant work, she is not disabled; and (5) if the claimant is not found to be disabled at step three, cannot perform her past relevant work, but can perform certain other available work, she is

---

[2] DIB and SSI claims are governed by separate statutes and regulations that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to those that apply to DIB.

not disabled. 20 C.F.R. § 404.1520. Before continuing to step four, the ALJ must assess the claimant's residual functional capacity ("RFC") by "incorporat[ing] all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (citing *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). If, at any step, the ALJ can make a conclusive finding that the claimant either is or is not disabled, then he need not progress to the next step of the analysis. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (citing 20 CFR § 404.1520(a)(4)).

In reviewing a claimant's appeal, the Court will reverse only "if the ALJ based the denial of benefits on incorrect legal standards or less than substantial evidence." *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). While an ALJ need not address every piece of evidence, he "must provide a 'logical bridge' between the evidence and his conclusions." *Varga*, 794 F.3d at 813 (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)). Thus, an ALJ's decision "will be upheld if supported by substantial evidence," which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). This Court may not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Where substantial evidence supports the ALJ's disability determination, the Court must affirm the decision even if "reasonable minds could differ" on whether the claimant is disabled. *Id.*

### III. ALJ Decision

ALJ Walker first determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of March 1, 2019. [Dkt. 7-2 at 28.] At step two, the ALJ found that Claimant had the following severe impairments: "degenerative disc disease; degenerative

3

arthritis of the bilateral knees; carpal tunnel syndrome; migraines; obstructive sleep apnea; and obesity." *Id*. at 18. At step three, the ALJ found that Claimant's impairments did not meet or equal a listed impairment during the relevant time period. *Id.* at 20. ALJ Walker then found that, during the relevant time period, Claimant had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasionally lift and carry 10 pounds, frequently lift and carry less than 10 pounds; push/pull unlimited except for the weights indicates [sic]; stand or walk for up to 2 hours in an 8-hour workday and sit for up to 6 hours in an 8-hour workday; occasionally climbing of ramps or stairs; never climbing ladders, ropes, or scaffolds; frequently balancing; occasionally stooping, kneeling, crouching, and crawling; no exposure to concentrated wetness; and frequent reaching, handling, fingering, and feeling bilaterally.

*Id.* at 21.

At step four, the ALJ found that Claimant was able to perform her past relevant work during the relevant time period as an eligibility specialist (DOT 201.362-030). *Id.* at 27. Accordingly, ALJ Walker concluded Claimant was not disabled. *Id.* at 28.

### IV.  Discussion

Claimant advances several arguments, each of which is addressed, in turn, below.

### A. ALJ's Subjective Symptom Evaluation

Claimant testified that she cannot work due to near constant pain in her back and joints, numbness in her hands, rheumatoid arthritis, difficulty sleeping, and mental health issues. [Dkt. 10-2 at 47-69.] In arriving at his determination of non-disability, the ALJ evaluated Claimant's subjective symptoms pursuant to 20 C.F.R. § 416.929 and SSR 16-3p. SSR 16-3p describes a two-step process for evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25,

2017). Second, the ALJ must evaluate the intensity and persistence of a claimant's symptoms, such as pain, and determine the extent to which they limit his ability to perform work-related activities. *Id.* at *3-4. At this step, the ALJ considers the claimant's subjective symptom allegations in light of the claimant's daily activities; the location, duration, frequency, and intensity of pain and limiting effects of other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; treatment other than medication for relief of pain; and other measures taken to relieve pain. 20 C.F.R. § 416.929(c)(3). When assessing a claimant's subjective symptoms, ALJs are directed to "consider the consistency of the individuals own statements. To do so, [they] will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *8. The ruling also explains that "[p]ersistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.* at *9.

      The ALJ must justify his subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and build an "accurate and logical bridge between the evidence and conclusion." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The Court's review of an ALJ's credibility determination is generally deferential unless "if, after examining the ALJ's reasons for discrediting testimony, we conclude that the finding is patently wrong." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). The ALJ's determination may be patently wrong where he fails to "'build an accurate and logical bridge between the evidence and the result.'" *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006)

5

(quoting *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000)). Simply put, an ALJ "must competently explain an adverse credibility finding with specific reasons 'supported by the record.'" *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (quoting *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015)).

In this case, after summarizing Claimant's hearing testimony about his symptoms and the medical evidence on record, the ALJ explained his subjective symptom evaluation as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

[Dkt. 10-2 at 23.] The ALJ then summarized the medical evidence of the record, as well as the findings of the vocational expert ("VE"). Specifically, the ALJ stated:

> I also note that despite her back and knee pain, carpal tunnel syndrome, migraines, and obesity, the claimant can perform most of her daily and other activities. She goes to the store to get art supplies, she cooks using a crockpot/slow cooker/pressure cooker, and she washes dishes and wipes the counters (testimony). She also reported at Exhibit 4E that she does laundry sometimes and her daughter reported at Exhibit 9E that she folds laundry. She performs personal care activities, per Exhibit 4F, and, as previously noted, treatment notes from her spine doctor show her medications are helpful in controlling her pain and keeping her functional (Exhibit 11F).

[Dkt. 10-2 at 25.] However, as the Claimant points out, her testimony stated that her boyfriend and daughter do most of the cooking, cleaning, and laundry. [Dkt. 12 at 5.]

As a general overview of Claimant's symptoms, the ALJ stated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with the medical evidence of record. The claimant testified that she has carpal tunnel syndrome and that her left hand stays numb, but she has had no treatment for carpal tunnel syndrome during the relevant period and wears her brace only sporadically, maybe once or twice per month. She testified that she takes Percocet for her back pain as needed, every

6

> day and up to four times per day, uses heat, and stretches, but she said she gets no relief. This is inconsistent with the treatment records from her spine doctor, who repeatedly notes at Exhibit 11F that the claimant's medications help to control her pain and keep her functional (Exhibit 11F, pp. 4, 9, 17, and 22). She testified that she has fibromyalgia, but she gets no treatment and does not see a doctor for it. She has sleep apnea, but her machine is broken; there is nothing in the evidence from her primary care physician at Exhibit 9F that mentions any problems with her CPAP machine, or any ongoing problems related to her sleep apnea. These records date through March 2021. She does have reported insomnia, but it is noted to be stable and well controlled on medication without side effects (Exhibit 9F, p. 4).

[Dkt. 10-2 at 25.] The ALJ effectively ignored the statements made by Claimant regarding her symptoms and stated that they are inconsistent with the medical records. However, the ALJ did not explore why Claimant had not seen a physician regarding certain conditions. This was error. See *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) (citing *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ may not draw inferences about a claimant's condition from the failure to follow a treatment plan unless the ALJ has explored the explanations for the lack of medical care)); *Patrick S. v. Kijakazi*, 2022 WL 4591458, at *6 (S.D. Ind. Sept. 30, 2022) (remand required because ALJ not permitted to draw negative inference regarding lack of treatment without first considering explanation).  Claimant testified that her primary doctor had retired, and she was looking for a psychiatrist, but first needed a doctor to refer her. [Dkt. 10-2 at 52.] In addition, the ALJ focuses on the fact that Claimant's CPAP machine had broken, but there were no medical records related to her sleep apnea. *Id*. at 25. However, the Claimant clearly stated that she needed to find a new primary care physician to refer her to a sleep specialist, as her prior primary care physician had recently retired. *Id*. at 52. The ALJ further focuses on Exhibit 11F, which is the opinion of Dr. Coleman, who stated that medication helps control Claimant's pain and keep her functional. However, Claimant testified that she takes up to four Percocet a day and experiences no relief to her back. *Id*. at 50-51. Finally, at the time of her testimony, the world

7

was at a stand-still due to the COVID-19 pandemic, which is evidenced by the fact that the hearing was conducted telephonically. *Id*. at 36. After reviewing the entire record, it becomes increasingly obvious that the ALJ downplayed or misinterpreted the evidence of record in several respects and thus the requisite logical bridge is absent from ALJ Walker's determination.

It was further error for the ALJ to rely on the fact that Claimant could carry out certain day-to-day activities without exploring the manner or frequency in which she carries them out. In addition, the ALJ failed to explain how Claimant's limited activities of daily living, as she performs them, are inconsistent with her alleged symptoms. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) ("[T]he ALJ did not explain why doing these household chores was inconsistent with [the claimant's] description of her pain and limited mobility. Nor is any inconsistency obvious, so the ALJ did not substantiate the finding that [the claimant's] daily activities reveal any exaggeration of [the claimant's] limitations."); *Sam K. v. Saul*, 391 F. Supp. 3d 874, 881 (N.D. Ill. 2019) (same). Nor does the ALJ explain how those activities, as Claimant performs them, constitute evidence that Claimant could perform the type of full-time work the ALJ found her capable of. As the Seventh Circuit has explained,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons (in this case, [claimant's] husband and other family members), and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Thus, the Seventh Circuit has held that "[w]ithout acknowledging the differences between the demands of such activities and those of a full-time job, the ALJ was not entitled to use [the claimant's] successful performance of life activities as a basis to determine that her claims of a disabling condition were not credible."

8

*Ghiselli v. Colvin*, 837 F.3d 771, 777-78 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014); *Bjornson*, 671 F.3d at 647). It was error for the ALJ to do so here.

The determination of the RFC must also be reassessed on remand, as it will depend on the ALJ's reassessment of Claimant's subjective symptoms and the medical opinions of record.

### B. ALJ's Evaluation of the Examining Physicians

ALJs are instructed to evaluate all medical opinions using factors including whether the opinion is supported by objective medical evidence; the opinion's consistency with other evidence; the professional's relationship with the patient, including the length, frequency, purpose, and extent of treatment; and the professional's specialization. 20 C.F.R. § 404.1520c(c). In addition, the regulation expressly recognizes that "[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder." 20 C.F.R. § 404.1520c(c)(3)(v). After considering the relevant factors, an ALJ must articulate how persuasive he finds each medical opinion in his decision. 20 C.F.R. § 404.1520c(b). The most important factors ALJs will use in determining the persuasiveness of a medical opinion are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Opinions that are supported by and consistent with objective medical evidence will be most persuasive. 20 C.F.R. § 404.1520c(c)(1)-(2).

After reviewing the entire record, it is apparent that ALJ Walker's crafted his opinion based on evidence he found to support his ultimate conclusion, rather than evaluating all of the evidence available. This is clear error. The Seventh Circuit has held that while the ALJ does not need to evaluate every piece of evidence, he cannot "rely only on the evidence that supports h[is] opinion*.*" *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *see also Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018) ("ALJs are not permitted to cherry-pick evidence from the

9

record to support their conclusions, without engaging with the evidence that weighs against their findings.").

For example, consultive examining physician Dr. Laurente opined that Claimant was not capable of standing and walking for at least two hours in an eight-hour workday, and that claimant was not able to carry less than ten pounds frequently or over ten pounds occasionally." [Dkt. 10-2 at 26.] However, the ALJ found that Dr. Laurente's opinion "not persuasive," *Id*. explaining:

> This opinion is not persuasive, as it is inconsistent with other evidence in the record and appears to be based solely on the claimant's reports to the examiner regarding her functional capacity; she indicated at Exhibit 5F, p. 3 that she could stand only 2 minutes, walk only 10 feet, and lift only 5 pounds. Dr. Laurente examined the claimant on only a one-time basis. Treatment notes from the claimant's own spine doctor, who has followed her prior to and since her surgeries in 2020, repeatedly noted that the claimant's pain medications controlled her pain and kept her functional (Exhibit 11F). Dr. Laurente also noted in his report that the claimant had only 3/5 motor strength of the lower extremities, but the claimant's own spine physician noted normal motor strength of the lower extremities except on only one occasion, in August 2020, immediately after her back surgery, when she had 4/5 motor strength. Subsequent treatment notes dated through May 2021 note normal motor strength of the lower extremities. Dr. Laurente and the treating spine surgeon have also both noted normal sensation, normal reflexes, negative straight leg raising tests and no atrophy (Exhibits 5F and 11F). The claimant does have an antalgic gait, per both physicians, but she does not require an assistive device for ambulation. The claimant also has arthritis in her bilateral knees (Exhibit 13F), but, again, she has normal motor strength in the lower extremities per her spine specialist, and she does not require the use of an assistive device (Exhibit 11F). There is simply nothing in the record to support Dr. Laurente's opinion that the claimant could not stand/walk for 2 hours in an 8-hour workday and could not lift/carry 10 pounds occasionally and less than 10 pounds frequently.

*Id*.

The ALJ discounted Dr. Laurente's opinion because "it appears to be based solely on the claimant's reports to the examiner regarding her functional capacity." [Dkt. 10-2 at 26.] In fact, however, Dr. Laurente's report details his examination of Claimant, and his

10

conclusions are based on his examination of Claimant and his medical expertise. [Dkt. 12 at 9]. The ALJ contrasts the opinion of Dr. Laurente with that of Dr. Coleman, Claimant's spine doctor, whose records showed that Claimant's pain was controlled with medication and that she was "functional." [Dkt. 10-2 at 25.] It appears that the ALJ assumed a great deal from the word "functional," without giving weight to the fact that Claimant's ability to function in her everyday life does not mean that she is able to perform sedentary work. The Seventh Circuit has "previously cautioned ALJs that there are critical differences between keeping up with activities of daily living and holding down a full-time job." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (citing *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014); *Bjohnson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). The ALJ provided no explanation as to why this comment from Dr. Coleman was more persuasive than that the opinion of Dr. Laurente, which was arrived at after he examined Claimant at the behest of the Commissioner. An ALJ must explain why he does not credit evidence that would support strongly a claim of disability, or why he concludes that such evidence is outweighed by other evidence." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 621 (7th Cir. 2010). He may not stray "beyond his expertise as an adjudicator and into the forbidden territory of 'playing doctor.'" *Mandrell v. Kijakazi*, 25 F.4th 514, 518 (7th Cir. 2022) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)); *Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009) ("The ALJ impermissibly 'played doctor' and reached his own independent medical conclusion when he determined that '[t]he level of treatment received also fails to infer limitations beyond the limitations described above in this decision.'").

Although "an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence," the opinion of an examining source generally receives "more weight" than the opinion of a non-examining source. *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (quoting 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1): "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you."). Rejecting the opinion of an agency's doctor that supports a disability finding is "unusual" and "can be expected to cause a reviewing court to take notice and await a good explanation." *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (citing *Beardsley*, 758 F.3d at 834). When an ALJ rejects an agency doctor's finding, a good explanation is deserved because the agency's own doctor is "unlikely ... to exaggerate an applicant's disability." *Zima v. Comm'r of Soc. Sec.*, No. 3:20-CV-486 JD, 2021 WL 4237357, at *3 (N.D. Ind. Sept. 16, 2021) (quoting *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013)).

In addition to the ALJ ignoring the opinion of Dr. Laurante, the ALJ also failed to provide a good explanation for discounting the opinion of consultative examining psychologist Dr. Perrone McGovern, who found that claimant was "likely able to do a simple repetitive task continuously for a two-hour period." [Dkt. 10-2 at 25.] The ALJ's opinion is as follows:

> The opinion of the consultative psychologist, Kristin Perron-McGovern, Ph.D., at Exhibit 4F that the claimant is likely able to do a simple, repetitive task continuously for a two-hour period, work at an average pace, interact appropriately with others (friendly and cooperative), and create and manage a budget (manage funds) is partially persuasive, as there is little support in the record for greater than mild mental limitations. The claimant receives no formal mental health treatment, and her psychotropic medications are prescribed by her family physician (Xanax was prescribed for her anxiety when her son died – Exhibit 9F) and her spine doctor (Exhibit 11F shows she is prescribed Prozac).

> Her PCP referred her to psychiatry, but the claimant testified that she has not yet found a psychiatrist. She has not required any emergency room treatment or inpatient hospitalization due to any psychiatric issues. Other evidence in the record also shows that her mood and affect have been normal aside from the period when her son died in March 2021 (Exhibits 9F, p. 3 and 11F, pp. 4, 8, and 21). Again, the evidence simply does not support greater than mild mental limitations.

[Dkt. 10-2 at 25-26.]

The ALJ's rejection of the examiners' opinions was based, at least in part, on the fact that it was based on Claimant's subjective symptoms, which the ALJ found less than fully credible. Because, as set forth above, the ALJ must reevaluate his findings regarding Claimant's subjective symptoms, he must also reevaluate his assessment of the examiner's opinion.

On remand, the ALJ shall reassess the weight given to the medical opinions of record, taking care to explain his conclusions and point to substantial evidence of record that supports those conclusions.

## V. Conclusion

For the reasons stated above, the Commissioner's decision is **REVERSED** and **REMANDED for further proceedings consistent with this Order**.

SO ORDERED.

Dated: 25 SEP 2023

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on
all ECF-registered counsel of record via
email generated by the Court's ECF system.